39 F.3d 80
 Lloyd C. ASHE, Petitioner-Appellee,
v.
Phillip STYLES, Superintendent of the State of North
Carolina; Michael F. Easley, Attorney General of
the State of North Carolina,
Respondents-Appellants.
Lloyd C. ASHE, Petitioner-Appellant,
v.
Phillip STYLES, Superintendent of the State of North
Carolina; Michael F. Easley, Attorney General of
the State of North Carolina,
Respondents-Appellees.
 Nos. 94-6545, 94-6573.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 11, 1994.
Decided Nov. 4, 1994.
 
 ARGUED: Clarence Joe DelForge, III, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, NC, for appellants. James Lee Blomeley, Jr., Murphy, NC, for appellee. ON BRIEF: Michael F. Easley, Atty. Gen. of North Carolina, North Carolina Dept. of Justice, Raleigh, NC, for appellants.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and PHILLIPS, Senior Circuit Judge.
 Reversed and remanded by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge MURNAGHAN and Senior Judge PHILLIPS joined.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Lloyd Ashe, a North Carolina inmate, brought this habeas corpus proceeding to challenge the sentence he received under his guilty plea to a state second-degree murder charge, contending that the sentence imposed did not comport with the terms of the plea agreement and thus that his plea was made involuntarily and in violation of his constitutional due process rights. The district court referred the petition to a magistrate judge, who issued a memorandum and recommended granting the writ. The district court reviewed the issues to which objection were made, agreed with the magistrate judge and ordered that the writ be issued. North Carolina appealed. Jurisdiction in this court is proper under 28 U.S.C. Secs. 1291, 2254. For the reasons set forth below, we now reverse [and remand].I.
 
 
 2
 Clinton Odom was killed in 1974 in a failed robbery attempt. At the time of death, the police concluded that the death was from accidental or natural causes. In 1983, however, Ted Killian was arrested on unrelated charges, and informed the police of the involvement of himself and several other people, including Ashe, in Odom's death.
 
 
 3
 Ashe, who by then was serving time in prison on an unrelated safecracking conviction, was charged with first-degree murder, exposing him to a possible sentence of life imprisonment. Ashe and his attorney entered into negotiations with the district attorney, which yielded fruit in a plea bargain. Under the agreement, Ashe agreed to plead guilty to second-degree murder. The "Transcript of Plea" form that Ashe signed on March 14, 1983 indicated that in return:
 
 
 4
 The term of imprisonment shall be no more than 50 years, and the defendant shall be sentenced as if the offense took place after the passage of the Fair Sentencing Act.
 
 
 5
 J.A. 36. Prior to the enactment of the Fair Sentencing Act, North Carolina sentencing was "indeterminate," meaning that judges imposed sentences that included a maximum and minimum time of imprisonment, creating a floor and ceiling. The general approach taken under the Fair Sentencing Act, however, was to establish presumptive sentences for various classes of crimes and to allow for upward or downward departures based on written findings by the sentencing court of aggravating or mitigating circumstances. Thus, while punishment for second degree murder prior to the Fair Sentencing Act ranged from two years to life imprisonment, the Fair Sentencing Act imposed a presumptive sentence of fifteen years imprisonment with a maximum term of life or fifty years.[1]
 
 
 6
 During the hearing on the plea agreement, the sentencing judge summarized the terms of the agreement as follows:
 
 
 7
 I don't know what--the prearrangement in this case is very similar to the previous one; that the imprisonment shall be no more than fifty years, and sentenced as if the presumptive sentencing law--or the fair sentencing law was in effect. But Mr. Lindsay is not the guarantor of what the sentence will be within the framework of that negotiation. You understand that?
 
 
 8
 A: Yes, sir.
 
 
 9
 J.A. 41. Later during the same hearing, the judge made the following comments:
 
 
 10
 The prosecutor and your lawyer have informed the Court that these are the terms and conditions of your plea. When I say these, these that follow. The term of imprisonment shall be no more than fifty years. You shall be sentenced as if the offense took place after the passage of the fair sentencing act.
 
 
 11
 But that's as to maximum sentence. Your sentence will still have to be set by me. And I'll take into account parole opportunities one had under the law as it was in 1974, whenever this crime occurred; and also any other cooperation he gives.
 
 
 12
 Is this correct as being your full plea agreement?
 
 
 13
 A: Yes sir.
 
 
 14
 J.A. 43. The sentencing hearing included Ashe, Killian and a third member of the robbery/murder party, Carl Hickey. All three pleaded guilty. Ashe received a sentence of not less than 30 nor more than 40 years, consecutive to his other sentences. Hickey received not less than 25 nor more than 35 years. Killian, who had confessed and had changed his life significantly since the time of the 1974 murder, received a flat sentence of 20 years, and the judge noted as he sentenced him that he was "taking into consideration I was to try to sentence you as if this were a fair sentencing case, taking into consideration aggravating and mitigating factors and presumptive sentence of fifteen years." J.A. 104. Thus, while the judge gave a flat sentence to Killian, he did not give one to Ashe, even though their plea agreements apparently were almost identical. Neither Ashe nor his lawyer objected to this discrepancy at the time.
 
 
 15
 Back in prison, Ashe began to file motions for appropriate relief. He filed his first motion for appropriate relief, which did not identify the discrepancy between the plea agreement and the sentence as a basis for relief, on September 12, 1984; it was filed pro se, and there was never any disposition of it. He filed a second motion, also not addressing the discrepancy between the plea agreement and the sentence, on April 12, 1989, also pro se, which was considered and denied by superior court judge J. Marlene Hyatt on May 17, 1989. In a brief, two-page order, she considered the merits of the claims and found that the allegations set forth no probable grounds for the relief requested. In addition, she stated:
 
 
 16
 THAT the defendant's failure to assert any other grounds in his motion shall be subject to being treated in the future as a BAR to any other claims, assertions, petitions, or motions that he might hereafter file in this case, pursuant to GS 15A-1419.
 
 
 17
 J.A. 128.
 
 
 18
 Nevertheless, Ashe filed a third motion, again pro se. J.A. 130-32. This motion addressed no issue other than that the terms of his plea bargain were not carried out and thus that his plea was not voluntary. In the prior two motions Ashe used standard printed forms that allowed him to check off which federal or state laws allegedly were violated and then provided a space for enumeration of the facts supporting the allegations. In contrast, Ashe hand wrote his third motion for appropriate relief; in the process, although he identified the alleged wrong, i.e., the discrepancy between his plea agreement and his sentence, he did not indicate the federal or state law that made this a proper basis for a motion for appropriate relief. Judge Hyatt also handled this motion, and despite her prior warning of procedural bar, she addressed the motion on the merits and denied it. J.A. 133-34.
 
 
 19
 Ashe then filed his first Sec. 2254 petition in federal district court on April 13, 1992. The district court referred the petition to a magistrate judge, who issued a memorandum in which he articulated Ashe's claim as follows:
 
 
 20
 Petitioner's plea agreement was breached when the state-court sentencing judge imposed a minimum and maximum sentence rather than a sentence under the Fair Sentencing Act, as promised by the state and agreed to by the court in petitioner's Transcript of Plea. Such breach deprived petitioner of immediate eligibility for parole and breached the terms of the agreement making such plea involuntary, all in violation of petitioner's fifth amendment right to due process as made applicable to the state through the fourteenth amendment.
 
 
 21
 J.A. 112. The magistrate judge noted however that "petitioner has attempted to allege a federal due process violation not clearly stated in his petition [and that] such federal issue has never been presented to any state court." J.A. 113. He therefore dismissed the petition and sent Ashe back to state court to give the state courts an opportunity to pass on the issue before it was presented to the federal courts, as required under 28 U.S.C. Sec. 2254(b).
 
 
 22
 Ashe returned to state court with his fourth motion for appropriate relief, filed July 9, 1992 and lifting liberally from the magistrate judge's memorandum. This time the state court appointed counsel and held a hearing. In the state's two-page response filed in opposition to the motion for appropriate relief, the state outlined Ashe's prior filings and attached copies of the dispositions. In paragraph 8, the state then invoked North Carolina's procedural bar:
 
 
 23
 Defendants's motion presently before the Court should be barred pursuant to N.C.G.S. sec. 15A-1419 and the Superior Court Judge Marlene Hyatt's order of May 17, 1989, set out in Exhibit 4, as a motion that has previously been determined or as a motion Defendant had an opportunity to raise and failed to do so as a part of his previous motions.
 
 
 24
 J.A. 145. The state did not address the merits. It did, however, in paragraph 9, address the proper relief if the court granted the motion:
 
 
 25
 Should the Court not bar the Defendant's motion, the appropriate relief granted should be for the Defendant to be resentenced pursuant to the original plea agreement, i.e. that he receive a sentence in accordance with the Fair Sentencing Act not to exceed 50 years.
 
 
 26
 Id.
 
 
 27
 The superior court held a hearing on this matter in June 1993. After the petitioner's counsel argued the merits, the state argued nothing beyond procedural bar. Petitioner's counsel admitted that there was "a lot of prior history" on that particular issue, J.A. 151, but noted that until this motion Ashe had been proceeding pro se, and that the precise issue hadn't been framed before the court as a due process violation. The superior court judge, Robert W. Kirby, the same judge that sentenced Ashe in 1983, stated:
 
 
 28
 I know that [Mr. Ashe] believes that he was given a harsher sentence than the man that committed the crime.
 
 
 29
 I justified that at the time as best I could for his benefit. I attempted and I truly wished that the District Attorney had not chosen to enter into an agreement--plea arrangement as is reflected here in this record.
 
 
 30
 I tried to treat it as some expression of the kind of sentence that was perfectly obvious that he couldn't be sentenced under the Fair Sentencing Act. I knew it was not in effect at the time and he reasonably got a minimum and a maximum term simply because that was what was required.
 
 
 31
 If I had given him a flat term at that time, he would have been immediately eligible for parole. No one would do that. You're not eligible for parole under the Fair Sentencing Act.
 
 
 32
 What I did was give him less than what he bargained for. The term of imprisonment shall be no more than 50 years; and it goes on to constitute the defendant's sentence as if the crime took place after the Fair Sentencing Act.
 
 
 33
 He did not receive a sentence greater than he could have received under the Fair Sentencing Act.
 
 
 34
 My conclusion, after reading and thinking about this a great deal, is that I am going to deny his motion for appropriate relief and let it wind its way back wherever it goes.
 
 
 35
 I will prepare an appropriate order reflecting my findings if I may do so after the term. If counsel permits me to do that, I will prepare an appropriate order and put it in the file.
 
 
 36
 I'm sure, Mr. Blomley, if your client wishes to appeal, I understand. I'll just say--
 
 
 37
 More importantly, I feel somewhat constrained by my own entry or my own order. Of course--there's a provision in the law that he's bound by his own motion for appropriate relief. He's bound to bring these issues instead of continuing to bring motions for appropriate relief. I realize he did it pro se. That's the Court's ruling, and I'll prepare an order.
 
 
 38
 J.A. 152-53. The court issued an order on July 30, 1993. The order laid out a series of factual findings, and then concluded with the following paragraphs:
 
 
 39
 BASED UPON THE FOREGOING FINDINGS OF FACT, the Court concludes that the sentence imposed was authorized at the time imposed, that it did not exceed the maximum authorized by law nor the maximum agreed upon in the plea agreement, was legally imposed and otherwise valid as a matter of law, and further that the Motion for Appropriate Relief should be DENIED.
 
 
 40
 The Court further concludes that the defendant's motion is barred pursuant to N.C.G.S. 15A-1419 as a motion that has been previously determined or as a motion in which the defendant had an opportunity to raise the same issues which are raised in the present Motion for Appropriate Relief.
 
 
 41
 THEREFORE, the Motion for Appropriate Relief is DENIED.
 
 
 42
 J.A. 155. The North Carolina Court of Appeals denied Ashe's petition for writ of certiorari on November 4, 1993.
 
 
 43
 Ashe then returned to federal court and filed his present Sec. 2254 motion. The matter was referred to the same magistrate judge. Again, the state invoked procedural bar as a basis to deny the petition. In a memorandum opinion, the magistrate judge found that Ashe's petition was not procedurally barred, and found in his favor on the merits, recommending that the writ issue within 90 days. The state submitted objections, and on April 26, 1994, the district court again found that there was no procedural bar and granted the writ, ordering that Petitioner be released unless he was resentenced or granted a new trial within 90 days. This appeal followed.
 
 II.
 
 44
 When a federal court, whether it be the Supreme Court reviewing the decision from the highest court of a state, or a federal court considering a petition for writ of habeas corpus that comes to that court after having been exhausted in the state system as required under 28 U.S.C. Sec. 2254(b), is asked to review the decision of a state court, the federal court is constrained only to address matters of federal law. Murdock v. City of Memphis, 87 U.S. (20 Wall.) 590, 22 L.Ed. 429 (1875); 28 U.S.C. Sec. 2254(a). Thus, where the state court decision being reviewed is based on federal law, either because federal law provides the rule of decision or because the state law issue is inextricably intertwined with federal law, the federal court is free to address the question presented with full assurance that it does not impermissibly stray beyond its mandate as established by our federal system. Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).
 
 
 45
 In contrast, when there exists an adequate and independent ground of decision founded on state law, a federal court is barred from addressing the merits of the federal claim, because, whatever the result of its treatment of the federal claim, the federal court must respect the state court's judgment regarding a state law matter. While this rule is of long standing as applied to substantive state law, its applicability to findings of procedural default under state law has been clarified in recent years. In Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), Sykes, a habeas corpus petitioner, had failed to make a timely motion to suppress statements he had made to the police that allegedly were made under conditions violative of Miranda v. Arizona. The state courts held that, absent such a motion, state law prohibited the petitioner from raising this claim in a post-conviction challenge to his conviction. After the case proceeded through the federal system, the Supreme Court held that this finding of procedural default under state law was an adequate and independent basis for the state court's judgment, and that the federal courts were barred from reviewing the claim for this reason, absent a showing of both cause for and prejudice arising from the procedural bar. Id. at 86-91, 97 S.Ct. at 2506-09.
 
 
 46
 Given the centrality of an adequate and independent state law ground of decision for any subsequent federal treatment of the same case, the courts grappled, in an unsatisfactory and inconsistent manner, with the task of determining when a state court had indeed relied on such a ground as the basis for its decision. First in Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), in the direct review context, and later in Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), in the habeas context, the Supreme Court articulated a series of rules and presumptions to apply in making this determination.
 
 
 47
 [W]hen ... a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so.
 
 
 48
 Long, 463 U.S. at 1040-41, 103 S.Ct. at 3476; see Coleman v. Thompson, 501 U.S. 722, 735-37, 111 S.Ct. 2546, 2557-58, 115 L.Ed.2d 640, 660 (1991); Nickerson v. Lee, 971 F.2d 1125, 1127 (4th Cir.1992). Thus, absent a "plain statement" by the state court that its reference to federal law is not as citation to binding precedent but rather, as with the decisional law of any jurisdiction, merely a discussion and evaluation of its reasoning, a presumption arises that the invocation of federal law signifies that the state court's judgment was founded on federal law, and that federal court review of the decision is permitted. Long, 463 U.S. at 1041-42, 103 S.Ct. at 3476-77; Nickerson, 971 F.2d at 1127.[2]
 
 
 49
 Harris also noted and blessed a state court's use of alternative holdings in deciding a case:
 
 
 50
 Moreover, a state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. Thus, by applying this doctrine to habeas cases, Sykes curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.
 
 
 51
 489 U.S. at 264 n. 10, 109 S.Ct. at 1044 n. 10.[3] Thus, where a state court both addresses the merits of the federal question but also invokes a state procedural bar that is adequate and independent of federal law as an independent ground for decision, a federal court must accord respect to the state law ground for decision, even if it is convinced the treatment of federal law was incorrect.
 
 
 52
 Of course, even given these rules that assist a court in determining what is not a clear and express indication of an independent reliance on state grounds, uncertainty remains over whether particular statements in state court opinions constitute clear and express invocations of a non-federal ground of decision. In this circuit, the outer bounds of the debate over this question were squarely met, but not decided, in Smith v. Dixon, 14 F.3d 956 (4th Cir.1994) (en banc). In that case, the court evenly divided[4] over the question of whether the state court had found Smith's motion for appropriate relief procedurally barred when it issued an order stating that it had read the petition and considered the arguments in support of the claims set out therein and that "[t]he court finds as a fact that the Claims No. I, II, III, and IV, set forth no probable ground for relief." Id. at 960 n. 1.
 
 
 53
 In contrast with the difficulty that case presented, we believe, contrary to both the magistrate judge and the district court below, that in this instance the state court's order clearly and expressly invoked North Carolina's procedural bar statute as an alternate ground for its decision. As noted above, the written order of the superior court, following argument on Ashe's fourth motion for appropriate relief, stated:
 
 
 54
 The Court further concludes that the defendant's motion is barred pursuant to N.C.G.S. 15A-1419 as a motion that has been previously determined or as a motion in which the defendant had an opportunity to raise the same issues which are raised in the present Motion for Appropriate Relief.
 
 
 55
 J.A. 155. The cited statute provides in part:
 
 
 56
 (a) The following are grounds for the denial of a motion for appropriate relief:
 
 
 57
 (1) Upon a previous motion made pursuant to this Article, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so....
 
 
 58
 (2) The ground or issue underlying the motion was previously determined on the merits upon an appeal from the judgment or upon a previous motion or proceeding in the courts of this State or a federal court, unless since the time of such previous determination there has been a retroactively effective change in the law controlling such issue.
 
 
 59
 N.C.G.S. Sec. 15A-1419(a). The superior court order tracks the language both of the state's brief, which discussed solely the matter of procedural bar, as well as of the statute it invoked. While in a perfect world, the order would have indicated with greater clarity whether it was under (a)(1) or (a)(2) that the procedural bar arose, we believe that the expressed language conveys with absolute clarity that the court relied, as one alternative, upon the procedural bar provision of the North Carolina statutes as a basis for denying Ashe's motion. See Harris, 489 U.S. at 255 n. 12, 109 S.Ct. at 1045 n. 12 ("[A] state court that wishes to rely on a procedural bar rule in a one-line pro forma order easily can write that 'relief is denied for reasons of procedural default.' ").
 
 
 60
 Ashe argues that we should conclude that the gross disparity, both in the discussion at the hearing and in the court's written order, between the treatment of the question on the merits and the treatment of the procedural bar issue, evidences that the court did not rely upon the state procedural bar as a separate ground for its decision. We disagree for two basic reasons. First, the very nature of our federal system dictates that alternative holdings based on state law issued by state courts must be accorded respect; that one issue is not given "equal treatment" cannot derogate in many instances from the validity of the holding. Some questions, by their very nature, do not require extended treatment to reach a proper conclusion; invocation of a procedural bar usually is a fairly straightforward task for a court, certainly in contrast with the particular question on the merits of constitutional law involved here. Counting lines of hearing transcript or order text is not a particularly helpful means of determining the character of the ruling involved.
 
 
 61
 Second, while the discussion at the hearing did in fact center on the merits, the fact that the judge later invoked a procedural bar does not indicate that the procedural bar had no force of its own. Indeed, N.C.G.S. Sec. 15A-1419(b) instructs a court:
 
 
 62
 Although the court may deny the motion under any of the circumstances specified in this section, in the interest of justice and for good cause shown it may in its discretion grant the motion if it is otherwise meritorious.
 
 
 63
 (Emphasis supplied.) Our reading of this provision indicates that it makes sense for a court to consider and analyze the underlying merits of a claim, irrespective of the looming procedural bar, for if the court actually thought that the claim had merit, it could dispense with the procedural bar for good cause shown and in the interest of justice. Absent a consideration of the merits, the court cannot properly determine whether the procedural bar should be invoked. Thus, in this instance, the judge should be commended, rather than castigated, for reaching and considering the merits, for in doing so he respected both the state's interest in finality, as expressed in Sec. 15A-1419(a), as well as its interest in fairness, as expressed in Sec. 15A1419(b).[5]
 
 
 64
 We conclude, therefore, that Ashe's petition for habeas corpus must be denied on the basis of the existence of an adequate and independent state law ground of decision in the form of his procedural default through the filing of multiple successive petitions as stated by the Superior Court order.
 
 
 65
 Ashe argues in the alternative that, even if he procedurally defaulted, he can demonstrate cause and prejudice to overcome the bar this default interposes. This matter was not addressed by either the magistrate judge or the district court below, and we believe that the better course is to remand the case for further consideration of this matter. Accordingly, we reverse and remand for further consideration consistent with this opinion.
 
 
 66
 REVERSED AND REMANDED.
 
 
 
 [1]
 Perhaps most importantly, the two sentencing schemes differed radically on parole eligibility. Under the previous scheme, an inmate was eligible for parole only after serving the lesser of the minimum sentence imposed or one-fifth of the maximum sentence eligible. In contrast, under the Fair Sentencing Act, parole eligibility occurs immediately upon sentencing. N.C.Gen.Stat. Sec. 15A-1371(a). Under the sentence Ashe received, he was eligible for parole only after 20 years, rather than immediately
 
 
 [2]
 As the Supreme Court clarified in Coleman v. Thompson, supra, this presumption towards federal law only arises, however, if the decision fairly appears to rest primarily on federal law or to be interwoven with federal law. 501 U.S. at 734-40, 111 S.Ct. at 2556-59, 115 L.Ed.2d at 659-62
 
 
 [3]
 While this may seem incongruous, since it appears to approve of state courts making exactly the types of "advisory opinions" on the merits that the adequate and independent state grounds doctrine is designed to curb among the federal courts, see Coleman, 501 U.S. at 728-31, 111 S.Ct. at 2553-54, 115 L.Ed.2d at 655-56; Long, 463 U.S. at 1040, 103 S.Ct. at 3476; Herb v. Pitcairn, 324 U.S. 117, 125-26, 65 S.Ct. 459, 463-64, 89 L.Ed. 789 (1945), there may be situations, such as the one herein involved, where it is proper under state law to consider the federal claim in determining the appropriateness of imposing the bar of procedural default
 
 
 [4]
 Except as pointed out in footnote 16 of the majority opinion, it is not clear from the version of the case set out in West's Federal Reporter that the court divided evenly on the question of whether Smith's habeas petition should be procedurally barred, for the fact that Chief Judge Ervin, Judge Phillips, Judge Murnaghan and Senior Judge Butzner joined the dissenting opinion of Senior Judge Sprouse is nowhere stated through an unfortunate error. In the present case, both the district court below, as well as the parties on appeal, have cited to Judge Wilkins' opinion on the matter of the procedural bar issue; indeed, West has accorded it key numbers, which are reserved only for opinions that contain controlling law. Nevertheless, the court divided evenly on that matter, and "an affirmance by an equally divided Court is not entitled to precedential weight." Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 234 n. 7, 107 S.Ct. 1722, 1730 n. 7, 95 L.Ed.2d 209 (1987) (citing Neil v. Biggers, 409 U.S. 188, 192, 93 S.Ct. 375, 378, 34 L.Ed.2d 401 (1972))
 
 
 [5]
 Using deductive reasoning, the district court concluded that, since the procedural bar of Sec. 1419(a) is mandatory, if the court addressed the merits it must have waived the procedural bar. But for the reasons explained in this paragraph, this is incorrect: as we read the statute, the only way for a state court to know whether to waive the bar as allowed under Sec. 1419(b) is to undertake an analysis of the merits. In other words, from our understanding of this state law, a state court that applies Sec. 1419 with fidelity should not simply deny a matter for reasons of procedural default; instead, it should examine the merits to determine whether, in the interests of justice, waiver of the procedural bar is appropriate. Thus, we reject the assertion that discussion of the merits signifies a per se waiver of the procedural bar under this state law