Lloyd C. ASHE, Petitioner–Appellant,

v.

Phillip STYLES, Superintendent; Attorney General of North Carolina, Respondents–Appellees.

No. 95–6257.

United States Court of Appeals, Fourth Circuit.

Argued July 10, 1995.

Decided Oct. 4, 1995.

sistant Attorney General, North Carolina Department of Justice, Raleigh, NC, for Appellees. **ON BRIEF:** Michael F. Easley, Attorney General of North Carolina, North Carolina Department of Justice, Raleigh, NC, for Appellees.

Before ERVIN, Chief Judge,
MURNAGHAN, Circuit Judge, and
PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge MURNAGHAN and Senior Judge PHILLIPS joined.

## OPINION

ERVIN, Chief Judge:

Petitioner-appellant Lloyd Ashe, a North Carolina inmate who pled guilty to second-degree murder, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Ashe argues that his due process rights were violated because he did not receive the benefit of his plea bargain with the State of North Carolina. Last year, we concluded that Ashe's claim was procedurally defaulted. *See Ashe v. Styles,* 39 F.3d 80 (4th Cir.1994). At that time, we remanded the case to the district court for consideration of whether Ashe could demonstrate the cause and prejudice necessary to overcome the bar imposed by his default. For the reasons explained below, after examining more thoroughly the substance of Ashe's claim, we conclude that it lacks merit and affirm the district court's denial of the writ on that basis.

I.

The facts underlying this case are set forth fully in our previous opinion. *See Ashe,* 39 F.3d at 82–85. Here, we repeat the information most pertinent to our holding below. On March 14, 1983, after negotiating with the district attorney, Ashe pled guilty to second-degree murder for the August 20, 1974 killing of Clinton Odom. The "Transcript of Plea" form that he signed stated that, in return for his guilty plea: "The term of imprisonment shall be no more than 50 years, and the defendant shall be sentenced

**ARGUED:** James Lee Blomeley, Jr., Collins, Blomeley & Woody, Murphy, NC, for Appellant. Clarence Joe DelForge, III, As-

as if the offense took place after the passage of the Fair Sentencing Act."

By its terms, that Act applies to felonies committed between July 1, 1981, and October 1, 1994. *See* N.C. GEN. STAT. § 15A–1340.1(a) (1988) (repealed 1993); N.C. GEN. STAT. § 15A–1340.10 (Supp.1994). As we described in our initial opinion,

> Prior to the enactment of the Fair Sentencing Act, North Carolina sentencing was "indeterminate," meaning that judges imposed sentences that included a maximum and minimum time of imprisonment, creating a floor and ceiling. The general approach taken under the Fair Sentencing Act, however, was to establish presumptive sentences for various classes of crimes and to allow for upward or downward departures based on written findings by the sentencing court of aggravating or mitigating circumstances. Thus, while punishment for second degree murder prior to the Fair Sentencing Act ranged from two years to life imprisonment, the Fair Sentencing Act imposed a presumptive sentence of fifteen years imprisonment with a maximum term of life or fifty years.

*Ashe,* 39 F.3d at 82.

Perhaps most importantly, Ashe's chances for parole under the two systems differed radically. Under the previous scheme, an inmate was eligible for parole only after serving the lesser of the minimum sentence imposed or one-fifth of the maximum possible sentence. On the other hand, because his crime was committed before the Fair Sentencing Act's effective date, Ashe would have been eligible for parole immediately had he been given no minimum sentence pursuant the Act's directive. See N.C. GEN. STAT. § 15A–1351(b) (1988) (superseded); id. § 15A–1371(a) (1988) (superseded). Under the sentence he received, then, Ashe was eligible for parole only after twenty years (defined by statute as one-fifth of a life sentence), rather than immediately. *Id.*

During the hearing on the plea agreement, the sentencing judge summarized the terms of the agreement as follows:

> I don't know what—the prearrangement in this case is very similar to the previous one; that the imprisonment shall be no more than fifty years, and sentenced as if the presumptive sentencing law—or the fair sentencing law was in effect. But Mr. Lindsay is not the guarantor of what the sentence will be within the framework of that negotiation. You understand that?
>
> A: Yes sir.

Later, during the same hearing, the judge made the following comments:

> The prosecutor and your lawyer have informed the Court that these are the terms and conditions of your plea. When I say these, these that follow. The term of imprisonment shall be no more than fifty years. You shall be sentenced as if the offense took place after the passage of the fair sentencing act.
>
> But that's as to maximum sentence. Your sentence will still have to be set by me. And I'll take into account parole opportunities one had under the law as it was in 1974, whenever this crime occurred; and also any other cooperation he gives.

*Ashe,* 39 F.3d at 82 (citations omitted). When the judge asked Ashe whether this "was his full plea arrangement" and whether he "personally accept[ed] this arrangement," Ashe responded "Yes sir." *Id.* The judge then sentenced Ashe to imprisonment for an indeterminate term of not less than 30 nor more than 40 years.

At the same hearing, the judge also sentenced two other persons implicated in Odom's murder. Like Ashe, defendant Carl Hickey received an indeterminate sentence, in his case not less than 25 nor more than 35 years. In contrast, Ted Killian, who had entered a plea arrangement "almost identical" to that of Ashe, *id.* at 83, and who had "confessed and changed his life significantly since the time of the 1974 murder, received a flat sentence of 20 years." *Id.* at 82. "[T]he judge noted as he sentenced [Killian] that he was 'taking into consideration I was to try to sentence you as if this were a fair sentencing case, taking into consideration aggravating and mitigating factors and presumptive sentence of fifteen years.'" *Id.* (quoting *Joint*

*Appendix* at 104). Neither Ashe nor his lawyer objected to the discrepancy between his sentence and that of Killian, nor did Ashe indicate that the judge had departed in any way from his plea agreement with the State.

Ashe did not appeal his conviction, but he ultimately filed four motions for appropriate relief in North Carolina Superior Court. The first, filed *pro se,* was never adjudicated, while the second and third, also *pro se,* were considered and denied. The first two petitions did not address any potential discrepancy between Ashe's plea agreement and his sentence. The third motion "addressed no issue other than that the terms of his plea bargain were not carried out and thus that his plea was not voluntary." *Id.* at 83.

After his third state court motion was denied on the merits, Ashe filed his first habeas petition in federal district court on April 13, 1992. A magistrate judge dismissed the petition on grounds of nonexhaustion, characterizing for the first time Ashe's claim as one arising under the Due Process Clause. Ashe then filed his fourth and final motion for appropriate relief in North Carolina Superior Court on July 9, 1992. Again, he challenged the validity of his sentence and the State's failure to comply with the plea agreement in which it had entered. The same Superior Court judge who had sentenced Ashe originally appointed counsel and conducted an evidentiary hearing. At the hearing, the judge stated:

> I know that [Ashe] believes that he was given a harsher sentence than the man that committed the crime. I justified that at the time as best I could for his benefit. I attempted and I truly wished that the District Attorney had not chosen to enter into an agreement—plea arrangement as is reflected here in this record.
>
> I tried to treat it as some expression of the kind of sentence that was perfectly obvious that he couldn't be sentenced under the Fair Sentencing Act. I knew it was not in effect at the time and he reasonably got a minimum and a maximum term simply because that was what was required.
>
> If I had given him a flat term at that time, he would have been immediately eligible for parole. No one would do that.

> You're not eligible for parole under the Fair Sentencing Act.
>
> What I did was give him less than what he bargained for. The term of imprisonment shall be no more than 50 years; and it goes on to constitute the defendant's sentence as if the crime took place after the Fair Sentencing Act.
>
> He did not receive a sentence greater than he could have received under the Fair Sentencing Act.
>
> My conclusion, after reading and thinking about this a great deal, is that I am going to deny his motion for appropriate relief and let it wind its way back wherever it goes.

On July 30, 1993, the court entered an order denying Ashe's motion, finding that it lacked merit. Specifically, the order stated:

> BASED UPON THE FOREGOING FINDINGS OF FACT, the Court concludes that the sentence imposed was authorized at the time imposed, that it did not exceed the maximum authorized by law nor the maximum agreed upon in the plea agreement, was legally imposed and otherwise valid as a matter of law, and further that the Motion for Appropriate Relief should be DENIED.

Additionally, the court found that "the defendant's motion is barred pursuant to N.C.G.S. 15A–1419 as a motion that has been previously determined or as a motion in which the defendant had an opportunity to raise the same issues which are raised in the present Motion for Appropriate Relief." The North Carolina Court of Appeals denied Ashe's petition for certiorari on November 4, 1993.

Ashe then filed the present § 2254 petition in federal district court. Based on the recommendation of the same magistrate judge that had handled the case initially, the district court found that the procedural bar had been raised ineffectively and that Ashe's due process rights had been violated pursuant to *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Accordingly, the court granted the writ on April 26, 1994. On appeal, we reversed the district court's judgment on the ground that Ashe's claim was procedurally barred. *Ashe,* 39

F.3d at 88. We found that an adequate and independent basis to dismiss Ashe's petition existed under state law, because the North Carolina Superior Court had denied Ashe's motion for appropriate relief as procedurally defaulted under section 15A–1419 of the North Carolina General Statutes. We remanded the case for consideration of whether Ashe, who was denied counsel to pursue his first three motions for appropriate relief, could demonstrate cause and prejudice to overcome the bar imposed by the default. *Id.*

On remand, the district court found that Ashe had not demonstrated cause, because he was represented by counsel at the fourth and final state court hearing. The district court reasoned that any cause Ashe might have shown based on lack of counsel had thereby been "cured." In dismissing Ashe's petition, the district court also noted that "[i]t has been found in the state court proceeding that he was not denied the benefit of his bargain." *Supplemental Appendix* at 27.

## II.

### A.

■ Ashe now appeals to this court for a second time. Our jurisdiction is proper under 28 U.S.C. §§ 2254 and 1291. We review *de novo* a district court's decision to deny a petition for a writ of habeas corpus. *Chen Zhou Chai v. Carroll,* 48 F.3d 1331, 1338 (4th Cir.1995). As we noted in *Turner v. Williams,* 35 F.3d 872 (4th Cir.1994), on federal habeas review, "a state court's factual findings are 'presumed to be correct,' whereas its findings on questions of law and mixed questions of fact and law receive independent federal consideration." *Id.* at 886 n. 14

1. As a preliminary matter, we reject the State's argument that we must dismiss Ashe's claim that the denial of counsel constitutes cause because it was not exhausted in state court. Where, as here, the underlying issue has been decided on the merits, dismissing the claim on the basis of nonexhaustion would be futile.

2. In pertinent part, the statute states:

(quoting 28 U.S.C. § 2254(d)) (citation omitted).

### B.

In attempting to establish the cause required to overcome his procedural default, see *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991), Ashe contends that North Carolina law guarantees indigent felons the assistance of counsel in pursuing motions for appropriate relief.[1] *See* N.C. GEN. STAT. § 7A–451(3) (1989);[2] *State v. Taylor,* 327 N.C. 147, 393 S.E.2d 801, 807 (1990) ("[I]ndigent defendants are entitled by statute to appointed counsel to represent them with regard to motions for appropriate relief."). Ashe acknowledges that there is no independent federal constitutional right requiring the appointment of counsel in state post-conviction proceedings. *Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); *Murray v. Giarratano,* 492 U.S. 1, 10, 109 S.Ct. 2765, 2770–71, 106 L.Ed.2d 1 (1989); *accord Hunt v. Nuth,* 57 F.3d 1327, 1340 (4th Cir.1995) ("A defendant does not have a constitutional right to counsel in state postconviction proceedings and cannot allege constitutionally ineffective assistance in those proceedings."); *Wise v. Williams,* 982 F.2d 142, 144–45 (4th Cir.1992) (same), *cert. denied,* — U.S. ——, 113 S.Ct. 2940, 124 L.Ed.2d 689 (1993). He also recognizes that the violation of state law *per se* is not cognizable on federal habeas review. *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991) ("reemphasiz[ing] that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Ashe argues, nonetheless, that "he was denied due process by virtue of the failure of the State to provide counsel in a situation where counsel is required under State law. At that level, it is not merely a violation of state law, but rather a federal constitutional violation, cognizable by this Court." *Reply*

(a) An indigent person is entitled to services of counsel in the following actions and proceedings: ...

(3) A motion for appropriate relief under Chapter 15A of the General Statutes if the defendant has been convicted of a felony, has been fined five hundred dollars ($500.00) or more, or has been sentenced to a term of imprisonment....

N.C. GEN. STAT. § 7A–451 (1989).

*Brief of Petitioner–Appellant* at 8; *cf. Pennsylvania v. Finley*, 481 U.S. 551, 558, 107 S.Ct. 1990, 1994–95, 95 L.Ed.2d 539 (1987) ("[S]ince respondent has received exactly that which she is entitled to receive under state law ... she cannot claim any deprivation without due process."). On the other hand, the State argues that North Carolina law requires the appointment of counsel to pursue a post-conviction motion only when an evidentiary hearing is held. *Brief of Respondents–Appellees* at 22–23 (relying on N.C. GEN. STAT. §§ 15A–1420(c)(3) and (4), which guarantee a prisoner the right to be represented by counsel at an evidentiary hearing on a post-conviction motion). Significant for purposes of our review, Ashe would be found entitled to counsel only if North Carolina law required the appointment of counsel. *Cf. Finley*, 481 U.S. at 555–58, 107 S.Ct. at 1993–95 (holding that habeas petitioners do not have a constitutional right to counsel, with the possible exception of the situation where a state grants that right). Importantly, beyond his deprivation of counsel claim, Ashe has not demonstrated the existence of cause on any other basis.

■ Typically, an appellate court addresses the issue of cause and prejudice prior to addressing the substance of a habeas petitioner's defaulted claim. *See Smith v. Dixon*, 14 F.3d 956, 982 (4th Cir.) (en banc), *cert. denied*, —— U.S. ——, 115 S.Ct. 129, 130 L.Ed.2d 72 (1994). If the court determines that the petitioner has failed to make the requisite demonstration, it need not engage in further analysis. *Stockton v. Murray*, 41 F.3d 920, 925 (4th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 37, 132 L.Ed.2d 918 (1995). In this case, however, the nature of Ashe's argument counsels us to reverse that usual course. Because we find that Ashe received the benefit of his plea bargain and, therefore, that his due process rights were not infringed under *Santobello*, we decline to address whether the denial of counsel during

his first three postconviction motions constituted a due process violation sufficient to overcome the bar imposed by his procedural default.

The related reasons behind our course are twofold. First, we are reluctant to decide needlessly an important matter of state law that has not been addressed conclusively by the state's courts. *Cf. Meredith v. Talbot County*, 828 F.2d 228, 231 (4th Cir.1987) (noting that "*Pullman* abstention ... is appropriate where there are unsettled questions of state law that may dispose of the case and avoid the need for deciding the constitutional question"). Second, as is our general practice, we hesitate to adjudicate undecided constitutional issues unnecessarily. *See Maryland v. EPA*, 530 F.2d 215, 227 (4th Cir.1975) ("[I]f a case can be decided on either of two grounds one involving a constitutional question, and the other, a question of statutory construction or general law, the court should decide on the basis of the latter."), *vacated on other grounds*, 431 U.S. 99, 97 S.Ct. 1635, 52 L.Ed.2d 166 (1977). For these reasons, we leave for another day a decision regarding the rights of inmates to assistance of counsel during post-conviction proceedings under N.C. GEN. STAT. § 7A–451(3).[3]

### C.

We turn now to the substance of Ashe's claim that his due process rights were violated under *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Ashe first argues that his due process rights were violated because he did not receive the benefit of his plea bargain, as he was not sentenced in accordance with North Carolina's Fair Sentencing Act. In the alternative, Ashe contends that the plea agreement he entered with the State of North Carolina was invalid as a matter of law, because he was ineligible to be sentenced under that Act.

■ As noted earlier, on habeas review, a state court's factual finding is entitled to a

---

**3.** We note that if such a right were found to exist under state law and to be cognizable under the federal constitution, its infringement would not be "cured" by the appointment of counsel at the final state proceeding. In this case, the district court's conclusion that cause did not exist because Ashe had representation at the hearing on

his last postconviction motion is illogical. Ashe's *Santobello* claim was held defaulted under state law at that proceeding. If Ashe had failed to raise the claim earlier because he unconstitutionally was deprived of his right to counsel, legal representation at the final hearing would not solve the constitutional defect.

presumption of correctness, unless that determination "is not fairly supported by the record" as a whole. *See* 28 U.S.C. § 2254(d). In contrast, "principles of contract interpretation applied to the facts are reviewed de novo." *United States v. Martin,* 25 F.3d 211, 217 (4th Cir.1994). After thoroughly examining the record in this case, we cannot conclude that the state court's determination that Ashe obtained the benefit of his plea bargain was incorrect.

■ Under *Santobello,* "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262, 92 S.Ct. at 499; *accord United States v. Peglera,* 33 F.3d 412, 413 (4th Cir.1994). "If the government breaches express or implied terms of a plea agreement, a violation of due process occurs." *Martin,* 25 F.3d at 217. As we have noted, "[i]t is well-established that the interpretation of plea agreements is rooted in contract law, and that 'each party should receive the benefit of its bargain.'" *Peglera,* 33 F.3d at 413. However, "the government is held only to those promises that it actually made to the defendant." *Id.*

■ Undeniably, the indeterminate sentence that Ashe received would have violated the Fair Sentencing Act had it been in effect on the date of Clinton Odom's murder. *See* N.C. GEN. STAT. § 15A–1351 (1988) (repealed 1993). There is, however, significant evidence that under the arrangement Ashe accepted, the terms of the Act applied only to his maximum, and not minimum, sentence. First, before imposing sentence and after indicating that Ashe would be sentenced according to the Act's terms, the court expressly told the parties: "But that's as to maximum sentence.... I'll take into account parole opportunities one had under the law as it was in 1974, whenever this crime occurred." *Joint Appendix* at 43. Second, Ashe registered no contemporaneous objection to the sentence that he received; nor did he call to the court's attention the discrepancy between his sentence and that of Ted

Killian, with whom the prosecutor had entered a similar plea agreement. *Cf. United States v. Sheffer,* 896 F.2d 842, 847 (4th Cir.) (holding that a defendant waives objection to a court's interpretation of an ambiguous plea agreement by declining the court's offer to withdraw his plea after the defendant is informed of the interpretation), *cert. denied,* 498 U.S. 838, 111 S.Ct. 112, 112 L.Ed.2d 82 (1990). Instead, Ashe responded affirmatively to the court's question whether he "personally accepted the arrangement." At the very least, his acquiescence indicates that Ashe was not surprised at the events which transpired at the hearing. Furthermore, neither of Ashe's first two motions for appropriate relief complain that the terms of his plea agreement were violated. Instead, they demonstrate a basic displeasure with the relative severity of his sentence. *Joint Appendix* at 126 ("Why is it that I was given twice the amount of time than anyone else involved in this case when I was not involved in any type of assault and I was not a [sic] active participant?").

In addition, contrary to his present assertions, Ashe did gain some benefit by entering this agreement with the district attorney. Had Ashe been tried and convicted of first-degree murder, he would have been eligible for a sentence of life imprisonment. *Ashe,* 39 F.3d at 82. Under his plea agreement, he received a maximum sentence of forty years and a minimum of thirty, making him eligible for parole in twenty years. Finally, we note that the only evidence in the record that the plea agreement at issue dictated that Ashe would be sentenced in such a way that he would become eligible immediately for parole is the declaration of his trial attorney, R. Scott Lindsay.[4] In contrast, the sentencing judge stated that "it was and continues to be my understanding of the ... plea agreement that it did not prohibit the imposition of a minimum sentence." *Joint Appendix* at 161. The judge also noted that he "[gave] [Ashe] less than he bargained for," because he imposed a sentence less than the fifty years authorized under the agreement. *Id.* at 162. Similarly, the district attorney who arranged the agreement recollected "[t]hat it

4. According to Lindsay's 1994 affidavit, the district attorney "offered to allow Mr. Ashe to plead to second degree murder, with sentencing to be

under the Fair Sentencing Act, and a cap of fifty years in prison." *Joint Appendix* at 159.

was my understanding at the time this plea was entered, and continues to be my understanding, that the above plea agreement limited only the defendant's maximum sentence.... [I]f this plea bargain had been interpreted at the time to prohibit a minimum sentence and thereby allow Mr. Ashe to receive immediate parole eligibility, I would not have entered into the plea agreement." *Id.* at 157. Based on the foregoing, the state court's finding that Ashe received the benefit of his plea bargain is sufficiently supported by the record.

As to his second contention, we agree that Ashe technically was ineligible to be sentenced under the Fair Sentencing Act, since the crime for which he was convicted occurred prior to the Act's effective dates. N.C. GEN. STAT. § 15A–1340.1(a) (1988) (repealed 1993); *see State v. Leggett,* 61 N.C.App. 295, 300 S.E.2d 823, 826 (1983) (applying at sentencing the law in effect on the date of defendant's crime). We see no reason, however, that the parties could not have entered a voluntary arrangement that included by reference some of the Act's terms, provided that the substance of the agreement comported with the law officially applicable to the crime. Under North Carolina law prior to the Fair Sentencing Act, a person convicted of second-degree murder could receive a life sentence, see 1973 N.C. Sess., Ch. 1201, § 1 (codified as amended at N.C. GEN. STAT. § 14–17), and indeterminate sentences were permissible, see N.C. GEN. STAT. § 15A–1351 (1988) (repealed 1993). Thus, the 30 to 40 year sentence Ashe received pursuant to his plea agreement is consistent with North Carolina law existing at the time of his crime. Furthermore, Ashe's sentence is less than the 50 year maximum for which he bargained. Ashe's rights under the Due Process Clause therefore were not violated.

### III.

Accordingly, the district court's denial of Ashe's petition for a writ of habeas corpus is

*AFFIRMED.*